**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 31, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

NEAL GREENBAUM; VICTOR JURY; DALE ARMSTRONG; GAIL ARMSTRONG,

       Plaintiffs

ROBERT TORCH,

       Intervenor-Plaintiff,

and

GIANT CAB COMPANY,

       Intervenor-Plaintiff - Appellee,

      v.

AMY BAILEY, in her official capacity as the Clerk for the City of Albuquerque; CITY OF ALBUQUERQUE BOARD OF ETHICS AND CAMPAIGN PRACTICES, in its official capacity,

       Defendants.
_____

COMMITTEE TO ELECT PETE DINELLI MAYOR,

       Intervenor - Appellant,

NEW MEXICO ATTORNEY GENERAL'S OFFICE,

       Amicus Curiae.

No. 13-2176

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 1:13-CV-00426-MCA-ACT)

Kristina Caffrey (Michael J. Cadigan with her on the briefs), Albuquerque, New Mexico, for Intervenor-Appellant, Committee to Elect Pete Dinelli Mayor.

Colin L. Hunter, Barnett Law Firm, P.A. (Alfred A. Park, Park & Associates, LLC, and Jason R. Bowles, Bowles Law Firm, with him on the briefs), Albuquerque, New Mexico, for Intervenor-Plaintiff - Appellee, Giant Cab Company.

Gary K. King, Attorney General, and Phillip Baca, Assistant Attorney General, State of New Mexico, Office of the Attorney General, on the brief for Amicus Curiae State of New Mexico.

Before **BRISCOE,** Chief Judge, **MURPHY**, and **MATHESON**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I. Introduction

Intervenor-Appellant, the Committee to Elect Pete Dinelli Mayor (the "Committee"), appeals from the district court's ruling that a provision of the Albuquerque City Charter limiting campaign contributions is unconstitutional. The original defendants chose not to appeal. The Committee, an intervenor whose interests were aligned with the original defendants, however, filed a notice of appeal. Plaintiff-Intervenor-Appellee, Giant Cab Company ("Giant Cab"),

moved to dismiss the appeal, arguing the Committee lacks standing because it does not have a direct stake in the outcome of the appeal. *See Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662 (2013). The Committee asserts it has the right to enforce the limitation on campaign contributions, giving it a personal stake in the outcome.

This court concludes the citizen-complaint provision of the Albuquerque Election Code does not give the Committee a personal stake in the litigation. Accordingly, we **grant** Giant Cab's motion and **dismiss** this appeal.

## II. Background

In 2007, the Albuquerque City Charter was amended to add the following subsection (f) to Article XIII, § 4:

> No candidate shall accept a contribution in support of the candidate's campaign from any corporation, limited liability company, firm, partnership, joint stock company or similar business entity or any agent making a contribution on behalf of such a business entity. No candidate shall accept a contribution in support of the candidate's campaign from any person, other than a City employee, who at the time of the contribution is in a contractual relationship with the City to provide goods or services to the City.

On May 6, 2013, Neal Greenbaum, Victor Jury, Dale Armstrong, and Gail Armstrong filed a civil rights complaint against Amy Bailey, in her official capacity as Clerk for the City of Albuquerque, and the City of Albuquerque Board of Ethics and Campaign Practices (the "Board"), alleging Article XIII, § 4(f)

("§ 4(f)") violates the First and Fourteenth Amendments. Plaintiffs sought declaratory and injunctive relief, nominal damages, fees, and costs.

The Committee was granted leave to file a Complaint in Intervention pursuant to Fed. R. Civ. P. 24.[1] In its complaint, the Committee sought declaratory relief in the form of a judgment declaring § 4(f) constitutional. The Committee also submitted a brief in support of the Motion to Dismiss previously filed by Bailey and the Board. In its brief, the Committee argued the Plaintiffs, all of whom are individuals, lacked standing to challenge § 4(f)'s ban on contributions "from any corporation, limited liability company, firm partnership, joint stock company or similar business entity." Shortly thereafter, Giant Cab moved to intervene as an additional plaintiff, acknowledging there was no representation in the lawsuit by a business or corporation. On August 19, 2013, the district court dismissed the four original plaintiffs from the suit, concluding they lacked standing because each desired to make a campaign contribution in his individual name and § 4(f) did not prohibit such contributions. Accordingly, only Giant Cab remained as a plaintiff.

On September 4, 2013, the district court ruled that § 4(f) violates the First Amendment and, accordingly, entered judgment in favor of Giant Cab. The court's ruling was limited to the "portion of Article, XIII, § 4(f) providing that

---

[1] The district court's order did not specify whether the Committee was entitled to intervene as of right pursuant to Fed. R. Civ. P. 24(a), or permissively pursuant to Fed. R. Civ. P. 24(b).

'[n]o candidate shall accept a contribution in support of the candidate's campaign from any corporation, limited liability company, firm, partnership, joint stock company, or similar business entity or any agent making a contribution on behalf of such a business entity.'" Specifically, the court concluded the City Council failed to show that § 4(f) is closely drawn to further the interests of eliminating or reducing corruption and preventing the circumvention of individual campaign contribution limits.

While the federal litigation was proceeding, the Committee filed a complaint with the Board, alleging the reelection campaign of Mayor Richard Berry accepted campaign contributions from certain individuals, in violation of § 4(f). The Board is charged, *inter alia*, with enforcing the Albuquerque Election Code (the "Election Code"). As part of its duties, it investigates verified complaints filed by members of the public.[2] The Board decides whether to schedule a preliminary hearing or to dismiss the complaint on the basis of the written filings. If a preliminary hearing is scheduled, the respondent is provided with an opportunity to file a statement explaining why the complaint fails to state a violation of the Election Code. At the preliminary hearing, the Board decides whether to dismiss the complaint or accept it. If the complaint is accepted, a hearing date is set. At the hearing, the parties are given the opportunity to present oral or documentary evidence and argument on the issues. If, after the

[2]The Board may also initiate charges on its own.

-5-

hearing, the Board concludes there has been a violation of the Election Code, it may fine a candidate up to $500 for each violation.

The Committee's complaint was referred to the full Board for a preliminary hearing. Mayor Berry responded to the complaint, arguing it should be dismissed because § 4(f) does not ban contributions from individuals who are merely owners, shareholders, members, employees, or agents of persons or businesses with city contracts. Specifically, Mayor Berry alleged the seven individuals identified in the Committee's complaint were merely employees of businesses with city contracts. There is no indication in the record whether the complaint was dismissed, settled, or referred for a full hearing. The Committee asserts the complaint was rendered "temporarily moot" by the district court's judgment, but it has not included any record evidence indicating what action was taken on the complaint after the district court entered judgment in favor of Giant Cab.

Bailey and the Board did not seek to appeal from the district court's judgment. The Committee, however, filed a timely notice of appeal. In its appellate brief, the Committee argues § 4(f) is constitutional because it is closely drawn to further important governmental interests in preventing (1) *quid pro quo* corruption, (2) the appearance of corruption, and (3) circumvention of individual campaign contribution limits. Because we lack jurisdiction to hear this appeal, we do not reach the Committee's argument.

-6-

## III. Discussion

On October 17, 2013, Giant Cab moved to dismiss the Committee's appeal for lack of jurisdiction, arguing the Committee lacked standing and also arguing the issue raised is moot. We then ordered the parties to submit additional briefing on the standing issue.

Any party invoking the power of the federal courts must demonstrate standing to do so. *City of Colo. Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1078 (10th Cir. 2009). This court has held that an intervenor may either "piggyback" on the standing of an existing party or establish its own independent standing. *Id.* at 1079. It is unclear whether the district court permitted the Committee to intervene on the basis of its own independent standing or on the basis of the standing of the Board and Bailey, parties at the time. Nevertheless, the question of piggyback standing is now irrelevant because Bailey and the Board have not appealed and, thus, no longer remain in the case. *San Juan Cnty. v. United States*, 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc) (holding an intervenor may piggyback on the standing of another party "so long as [the] party with constitutional standing on the same side as the intervenor remains in the case" (quotation omitted)). Accordingly, we must determine whether the Committee has independent standing to proceed with its appeal.

In the typical case, a party can establish Article III standing by proving an actual injury traceable to the defendant which would likely be redressed by a

-7-

favorable judicial decision. U.S. Const. art. III, § 2; *Utah Animal Rights Coal. v. Salt Lake Cnty.*, 566 F.3d 1236, 1240 (10th Cir. 2009). This case, however, is not typical because the Committee's interests are aligned with the interests of the named defendants, not the plaintiffs.[3] The Supreme Court recently addressed the issue of defendant standing in *Hollingsworth*. In that case, the district court declared a California law unconstitutional and enjoined state officials from enforcing it. *Hollingsworth*, 133 S. Ct. at 2662. The state officials did not appeal but petitioners, who had intervened in the district court, filed a notice of appeal. *Id*. The Court noted that petitioners had not been ordered "to do or refrain from doing anything." *Id*. Thus, the Court examined whether they had standing to proceed with the appeal.

Applying the general principle that a litigant does not have standing unless he "seek[s] relief for an injury that affects him in a personal and individual way," the Court concluded petitioners lacked standing because they did not have a "direct stake" in the outcome of the appeal. *Id*. (quotation omitted). Rejecting petitioners' arguments that their role as proponents of the challenged law gave them a direct stake,[4] the Court held that petitioners were "seeking relief that no

<hr />

[3]When it was permitted to intervene, the Committee was not explicitly identified as a plaintiff or defendant. Both parties, however, have proceeded on the premise the Committee's interests were aligned with those of the Defendants.

[4]The Court also rejected petitioners' argument that they were authorized to act as agents of the people of California. *Hollingsworth v. Perry*, 133 S. Ct.

(continued...)

more directly and tangibly benefits [them] than it does the public at large." *Id.* (quotation omitted).

Giant Cab argues *Hollingsworth* controls the outcome of this matter because the Committee's interest is no different than that of the general public. This is a compelling argument, particularly in light of the Court's statement that it has never "upheld the standing of a private party to defend the constitutionality of a state statute when state officials have chosen not to." *Id.* at 2668. The Committee argues it has standing because the Election Code confers on it the power to "enforce" § 4(f). Thus, it argues, it is not in the same position as the appellants in *Hollingsworth* who had "no role—special or otherwise—in the enforcement of [the California law at issue]." *Id.* at 2663.

The Committee's argument is unavailing. The verb "enforce" is defined as "[t]o give force or effect to (a law, etc.); to compel obedience to." Black's Law Dictionary 608 (9th ed. 2009). Like any other member of the public, the Committee's role with respect to the Albuquerque Election Code is limited to filing a complaint with the Board. Even if such a complaint is filed, as was the case here, the Committee possesses no enforcement power with respect to § 4(f) because it is the Board, not the complainant, that has the power to enforce the Election Code. The Board alone determines whether to hold hearings or dismiss

---

[4](...continued)
2652, 2666 (2013).

the complaint. Although the complainant may present evidence and argument if a hearing is held, it is the Board that may impose a fine on the respondent and/or issue a public reprimand if it, alone, determines whether a violation has occurred. If the Board enters into a settlement with the respondent at any time after the filing of the complaint, the complainant has no role in this settlement process.

The Committee argues it has a direct personal stake in the outcome of this appeal because the district court's ruling prevented it "from finishing its Board of Ethics proceeding or beginning a new one." As to the former, we have already explained that once a complaint is filed with the Board, the complainant has no control over whether its complaint is dismissed, settled, or set for a hearing. Thus, the district court's ruling has not affected the Committee in a "personal and individual way." *Hollingsworth*, 133 S. Ct. at 2662 (quotation omitted). And, as to the latter, the Committee cannot base its standing on the right to bring a new complaint because that is a right shared by all members of the public. *Id*. ("A litigant raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." (quotation omitted)).

Because the Committee has no power to enforce the Election Code and has not identified any injury that affects it in a personal and individual way, it has no

-10-

direct stake in the outcome of this appeal.[5] *Id.* at 2662-63. Instead, like the

petitioners in *Hollingsworth*, the Committee's "only interest in having the District

Court order reversed [is] to vindicate the constitutional validity of a generally

applicable . . . law." *Id*. at 2662. Accordingly, the Committee lacks standing to

proceed with this appeal.

## IV. Conclusion

Giant Cab's motion to dismiss is **granted** and the appeal is **dismissed**.

---

[5]The Committee also suggests it has standing because the dismissal of its declaratory judgment action created a personal stake in the appeal. It cites no authority for this proposition because none exists. It is well-settled that the filing of a declaratory judgment action does not confer standing on a party. *Bishop v. Smith*, 760 F.3d 1070, 1091 n.13 (10th Cir. 2014) ("That the plaintiffs' action was in part for a declaratory judgment does not affect the standing analysis. Like any lawsuit, a declaratory-judgment action must meet Article III's standing criteria . . . .").