# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 8, 2017         Decided June 22, 2018

No. 16-1150

AMEREN SERVICES COMPANY, AS AGENT FOR UNION ELECTRIC
COMPANY D/B/A AMEREN MISSOURI, AMEREN ILLINOIS
COMPANY D/B/A AMEREN ILLINOIS AND AMEREN
TRANSMISSION COMPANY OF ILLINOIS, ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

MIDCONTINENT INDEPENDENT SYSTEM OPERATOR, INC., ET
AL.,
INTERVENORS

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*Michael J. Thompson* argued the cause for petitioners
MISO Transmission Owners and intervenor Midcontinent
Independent System Operator, Inc. On the joint briefs were
*Jim Holsclaw*, *Matthew R. Dorsett*, *Christopher D. Supino*,
*Brooksany Barrowes*, and *Marcia Hook*. *Wendy N. Reed* and
*Matthew J. Binette* entered appearances.

*Nicholas M. Gladd*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the briefs were *Robert H. Solomon*, Solicitor, and *Elizabeth E. Rylander*, Attorney. *Beth G. Pacella*, Attorney, entered an appearance.

Before: TATEL, GRIFFITH and SRINIVASAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

In 2011, the Federal Energy Regulatory Commission issued Order 1000, which aims, among other things, to encourage the development of "interregional" electricity transmission projects—projects spanning more than one geographic region. The interregional component of Order 1000 rested on the belief that certain interregional projects might meet the needs of transmission providers and customers more efficiently and effectively than regional projects, but that prevailing incentives and coordination mechanisms did not adequately encourage regional transmission providers to pursue interregional projects.

To that end, Order 1000 calls for regional providers to jointly evaluate interregional projects. As part of that process, providers must adopt cost-allocation methodologies for dividing up the costs of a joint project. The primary goal of Order 1000's cost-allocation provisions is to assure that the relative costs borne by a particular transmission provider be commensurate with the relative benefits gained by the provider from the project.

This case concerns one transmission provider's proposed interregional cost-allocation methodology. Midcontinent Independent System Operator (MISO), an organization that operates transmission facilities on behalf of providers across

fifteen states in the Midwest, proposed to conduct cost allocation for interregional projects using what's called a cost-avoidance method. The share of costs allocated to MISO under that method corresponds to the benefits to MISO of its regional projects that would be displaced by the interregional project. In identifying which regional projects should be regarded as displaced by an interregional project, MISO proposed to exclude any project that had already been approved by the MISO board.

The Commission rejected MISO's cost-allocation approach. In the Commission's view, excluding approved regional projects from the analysis would result in a failure to account for the full potential benefits of an interregional project. The transmission providers that make up MISO filed a petition for review in this court. We deny the petition.

I.

A.

Electric transmission in the United States is largely managed by regional transmission organizations (RTOs) and independent system operators (ISOs). Those entities operate the electric transmission systems for a geographic region on behalf of the local utilities (known as transmission providers) in a region. MISO operates transmission facilities in the midwestern United States on behalf of more than two dozen transmission providers, petitioners here.

For the past several decades, the Federal Energy Regulatory Commission, acting under its authority to fix just and reasonable rates under section 206 of the Federal Power Act has issued orders requiring RTOs and ISOs to adopt practices meant to encourage competition in the market for

electricity. *E.g.*, *Transmission Planning and Cost Allocation by Transmission Owning and Operating Public Utilities*, Order No. 1000, 136 FERC ¶ 61,051 at PP 1-5 (2011). Order 1000, among the most recent of those orders, requires ISOs and RTOs to consider and evaluate interregional projects—projects embracing more than one region—and set certain parameters for allocating the costs of those interregional projects among providers. *Id.* The Commission's aim is to induce the construction of interregional projects "if such facilities address the needs of the transmission planning regions more efficiently or cost-effectively" than regional projects. *Id.* at 111.

Order 1000's cost-allocation provisions seek to further that goal. Establishing both a mechanism and set of principles for cost allocation, Order 1000 calls for neighboring ISOs and RTOs to reach agreements on cost allocation for interregional projects that avoid free rider problems, that improve transparency with respect to the costs of interregional projects, and that otherwise align regional and interregional planning processes. The guiding principle behind Order 1000's cost-allocation provisions is that the costs of interregional projects should be "allocated in a way that is roughly commensurate with benefits." *Id.* at 178.

This court considered a petition for review raising a variety of challenges to Order 1000. *S.C. Pub. Serv. Authority v. FERC*, 762 F.3d 41 (D.C. Cir. 2014) (per curiam). The court sustained Order 1000 in all respects.

B.

MISO submitted filings to the Commission that purported to comply with Order 1000's interregional project coordination and cost-allocation provisions. The particular filing at issue in this case concerns the cost-allocation methodology MISO

proposed to use with respect to one of its neighboring transmission planning regions, the Southeastern Regional Transmission Planning organization (SERTP).

MISO proposed to conduct cost allocation using a "cost-avoidance" method. Under that method, the costs allocated to MISO for a given interregional project would correspond to the costs of the regional projects MISO expects to avoid as a result of the interregional project—that is, the costs of the regional projects rendered unnecessary by the interregional project. Of central relevance here, MISO proposed to include in its cost calculation only those displaced projects that had been identified in the regional transmission plan but had yet to be approved. The costs of displaced projects already approved in the regional transmission plan would be excluded from the calculation.

The Commission accepted MISO's compliance filing in part. The Commission concluded that the cost-avoidance method largely complied with Order 1000's cost-allocation provisions calling for the costs of an interregional project to be allocated in a manner roughly commensurate with the project's benefits. As a general matter, the Commission said, the costs of regional projects that would be avoided by undertaking an interregional project should approximate the expected benefits of the interregional project.

The Commission ultimately rejected MISO's proposed cost-allocation method, however, because it excluded from its calculation the costs of any displaced projects that had already been approved in MISO's transmission plan. By excluding approved projects, the Commission determined, MISO's methodology would undervalue the benefits of an interregional project. That undervaluation, the Commission found, would result in an improper allocation of costs: relative to its

neighboring region (SERTP), MISO would bear a lesser share of costs than would be warranted based on the share of an interregional project's benefits it would receive.

In addition, the Commission concluded, inclusion of approved regional projects in the cost-allocation analysis would make it more likely that MISO would pursue a beneficial interregional project—*i.e.*, one that would displace less efficient and less cost-effective regional projects. That is because, if MISO counts an approved regional project for cost-allocation purposes, it also includes that project when assessing the benefits of an interregional project for purposes of deciding whether to undertake the project. The inclusion of an approved regional project for cost-allocation purposes thus ultimately makes it more likely that an interregional project will be pursued.

MISO filed a request for clarification and, in the alternative, rehearing. MISO argued that the Commission's requirement to include approved regional projects in MISO's cost-avoidance calculation could lead to the displacement of those approved projects: if, as just explained, the inclusion of approved regional projects increases the likelihood that an interregional project will be pursued, the selection of that project could occasion the displacement of approved regional projects that are rendered unnecessary. The possibility that already-approved regional projects could be displaced, MISO contended, creates uncertainty among transmission providers and harms investors and consumers.

The Commission denied MISO's petition, reiterating its position that MISO's cost-avoidance methodology failed to account for the full range of projects displaced by interregional projects, thus undervaluing the benefits of an interregional project. The Commission also noted that MISO's cost-

avoidance methodology lacked adequate transparency to comply with Order 1000 because MISO failed to explain what it meant for a project to be "identified," but not approved, in its current regional transmission plan. *Midcontinent Indep. Sys. Operator, Inc.*, 153 FERC ¶ 61,247 at P 10 (Nov. 25, 2015).

The transmission providers forming MISO filed a petition for review in this court, and MISO intervened in their support. The transmission providers making up SERTP intervened on the Commission's side. Petitioners advance two principal arguments: first, that the Commission did not adequately respond to their contention that the mandated change in cost-allocation methodology would displace approved projects, causing harm to the providers and their customers; and second, that the Commission's denial of MISO's compliance filing did not comport with the Commission's affirmative obligation under section 206 of the Federal Power Act, 16 U.S.C. § 824e, to justify its rates as just and reasonable.

## II.

At the outset, the Commission argues that we should not reach the merits of petitioners' arguments for three separate reasons: (i) petitioners lack standing; (ii) the issues are not ripe for consideration; and (iii) petitioners did not exhaust one of their arguments. We conclude that petitioners have standing and that the dispute is ripe, but that petitioners failed to exhaust one of their arguments before the Commission.

## A.

We consider first whether petitioners have standing to challenge the Commission's actions. To establish standing, petitioners must demonstrate: (i) that they have suffered or will imminently suffer a concrete and particularized injury, (ii) that

a causal connection exists between the injury and the challenged conduct, and (iii) that the injury is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

The Commission argues that petitioners have suffered no cognizable injury and that any injury bears no causal connection to the orders on review. In the Commission's view, any injury the petitioning transmission providers suffered from its orders is too abstract and speculative to give rise to standing. We need not resolve whether the petitioners have standing, because we conclude that the intervenor, MISO, has standing as the object of the orders on review.

"[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006). A party that has properly intervened "becomes a full participant in the lawsuit and is treated just as if it were an original party." *Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007, 1017 (D.C. Cir. 1985). That rule applies equally in the contexts of an appeal and a petition for review. *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 376-77 (1987). The Supreme Court has therefore concluded that an intervenor may maintain an appeal even if the original party does not appeal, as long as the intervenor has standing to invoke the appellate court's jurisdiction. *See Diamond v. Charles*, 476 U.S. 54, 68 (1986).

It follows that an intervenor with standing to assert a claim on petition for review may maintain an action even if the party originally petitioning for review lacks standing to assert the claim. *See Greenbaum v. Bailey*, 781 F.3d 1240, 1242-43 (10th Cir. 2015); *Bond v. Utreras*, 585 F.3d 1061, 1071-72 (7th Cir. 2009); *cf. Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct.

1645, 1651 (2017) (stating that an intervenor of right may "seek[] additional relief beyond that which the plaintiff requests" if it has standing as to the relief it seeks). *See generally* 15A Charles Alan Wright et al., Federal Practice and Procedure § 3902.1 (2d ed. 2018). Although our circuit has yet to hold as much expressly, we have applied that understanding without comment. *See Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 821 (D.C. Cir. 2006).

We conclude that MISO has standing to challenge the Commission's denial of its compliance filing, and that we thus can consider petitioners' claims that the denial is arbitrary and capricious and contrary to law:  MISO has joined petitioners' arguments in full and those arguments are identical in substance and scope to MISO's claims. *See Town of Chester*, 137 S. Ct. at 1651.  MISO, unlike petitioners, is the direct "object of the action" being challenged. *Defenders of Wildlife*, 504 U.S. at 561.  The Commission denied MISO's compliance filing on the ground that it did not comply with Order 1000's cost-allocation provisions.  That denial requires MISO not only to resubmit its compliance filing but also to revise its tariff.  In those circumstances, "there is ordinarily little question" that the government's action causes the regulated party an "injury, and that a judgment preventing . . . that action will redress it." *Id.* at 561-62.

The principle that a regulated party generally has standing to challenge an agency action regulating its behavior holds true here.  The challenged orders require MISO to revise its tariff, and that revision could require MISO to pay a greater proportion of the costs of certain interregional projects jointly undertaken by MISO and its neighboring region SERTP.  A favorable decision from our court is likely to prevent the challenged revision to MISO's tariff.  Accordingly, as the Commission itself acknowledged in oral argument, Oral

Argument at 25:28-25:38, even if petitioners lack standing, MISO, as the object of the agency's action, has standing.

B.

The Commission next argues that we cannot consider petitioners' claims at this time because they are not ripe for our review. In the Commission's view, petitioners' claims are unripe because it is unclear at this point whether the Commission's orders will in fact result in the displacement of any approved regional project. The Commission notes that, in the event any displacement were to occur, petitioners could seek rehearing and judicial review then. We conclude that petitioners' claims are ripe for our review.

We defer review of administrative decisions on ripeness grounds "where (1) delay would permit better review of the issues while (2) causing no significant hardship to the parties." *N. Ind. Pub. Serv. Co. v. FERC*, 954 F.2d 736, 738 (D.C. Cir. 1992). If a claim "rests 'upon contingent future events that may not occur,'" it is unripe. *N.Y. State Elec. & Gas Corp. v. FERC*, 177 F.3d 1037, 1040 (D.C. Cir. 1999) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

Here, review is appropriate now. Contrary to the Commission's suggestion, we need not know with certainty whether approved projects will in fact be displaced by the Commission's orders to assess whether the orders adequately addressed petitioners' concerns. The actual displacement of approved projects tells us little about the adequacy of the Commission's explanation, especially when the Commission justified its decision on grounds that acknowledge the possibility that displacement will occur. Nor would further factual development aid the determination whether the Commission failed to make the requisite finding of just and

reasonable rates under section 206 of the Federal Power Act. The claim that the Commission failed to make an affirmative finding under section 206 does not depend on factual questions about the displacement of projects.

C.

Finally, the Commission argues that we cannot reach the merits of one of petitioners' claims because it was not properly presented to the agency in a request for rehearing. We agree.

Under 16 U.S.C. § 825*l*(b), parties seeking judicial review of the Commission's orders under the Federal Power Act must "first petition for rehearing of those orders and must themselves raise in that petition all of the objections urged on appeal," unless they can show "reasonable grounds" for their failure to do so. *Wabash Valley Power Ass'n v. FERC*, 268 F.3d 1105, 1114 (D.C. Cir. 2001) (formatting modified and citations omitted). Whether petitioners have complied with this "unusually strict [exhaustion] requirement," *id.*, hinges on whether their request for rehearing "alerted the Commission to the legal arguments" they now raise on judicial review, *Save Our Sebasticook v. FERC*, 431 F.3d 379, 381 (D.C. Cir. 2005). Petitioners must raise each argument with "specificity," *Wis. Power & Light Co. v. FERC*, 363 F.3d 453, 460 (D.C. Cir. 2004); objections may not be preserved either "indirectly," *Office of the Consumers' Counsel v. FERC*, 914 F.2d 290, 295 (D.C. Cir. 1990), or "implicitly," *Kelley ex rel. Mich. Dep't of Nat'l Res. v. FERC*, 96 F.3d 1482, 1488 (D.C. Cir. 1996).

In this case, petitioners raise two objections to the Commission's orders. First, they argue that the Commission failed to respond adequately to their concerns about the displacement of approved regional projects and the harms to transmission providers and customers resulting therefrom.

Petitioners adequately raised that argument in their petition for rehearing.

Second, petitioners contend that the Commission's orders impermissibly shifted to them the burden of proving that the rates proposed in MISO's compliance filing were just and reasonable. In their view, section 206 of the Federal Power Act required the Commission first to prove that the proposed rates were unjust and unreasonable, and then determine new rates that would be just and reasonable. But that argument, as the Commission points out, appeared nowhere in petitioners' requests for rehearing. Petitioners' rehearing requests instead focused on the harms they would suffer as a result of the Commission's orders, not on whether the Commission had improperly shifted the burden of proving just and reasonable rates to the petitioners.

Petitioners respond that the question whether the Commission has complied with its statutory obligation to ensure just and reasonable rates ultimately inheres in every challenge to the Commission's rate orders, and thus can never be considered a new argument raised for the first time in a petition for review. Petitioners misunderstand the Federal Power Act's exhaustion requirement. To bring a particular claim in a petition for review, a petitioner needs to have alerted the Commission to the specific "legal argument[]" presented on rehearing (absent a reasonable ground for not doing so). *Save Our Sebasticook*, 431 F.3d at 381. Petitioners failed to do so here.

If we were to accept petitioners' rationale, parties would never need to raise specific legal arguments before the Commission as long as they broadly challenge the justness and reasonableness of rates under section 206 before the court of appeals. Such a holding would undermine the Federal Power

Act's exhaustion requirement as to a class of claims, and would contravene our precedents requiring that parties specifically—rather than implicitly or indirectly—raise claims before the Commission on rehearing. Here, petitioners failed to satisfy that requirement with regard to their contention that the Commission did not comply with section 206 of the Federal Power Act.

## III.

On the merits, petitioners argue that the Commission failed to give adequate consideration to their concerns about the effects of displacing approved regional projects. We disagree.

We set aside the Commission's actions if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "An agency's failure to respond meaningfully to objections raised by a party renders its decision arbitrary and capricious." *PPL Wallingford Energy LLC v. FERC*, 419 F.3d 1194, 1198 (D.C. Cir. 2005) (internal quotation marks omitted). But if "FERC 'has considered the relevant factors and articulated a rational connection between the facts found and the choice made,' we will uphold its decision." *Aera Energy LLC v. FERC*, 789 F.3d 184, 190 (D.C. Cir. 2015) (quoting *Transcon. Gas Pipe Line Corp. v. FERC*, 518 F.3d 916, 919 (D.C. Cir. 2008)). That is the case here.

Petitioners contend that the Commission failed to give adequate consideration to four concerns they had raised in their request for rehearing. We conclude that the Commission adequately addressed each of petitioners' concerns.

*First*, petitioners argued generally that the Commission's orders could require them to replace an already-approved

regional project with a new interregional project. In response, the Commission acknowledged that possibility, noting that "displacing a selected regional transmission project with a more efficient or cost-effective interregional transmission solution" would not be "inconsistent with MISO's regional transmission planning process." *Midcontinent Indep. Sys. Operator, Inc.*, 153 FERC ¶ 61,247 at P 12.

*Second*, petitioners contended that the displacement of approved regional projects would harm certain stakeholders in various ways. For instance, developers might have already expended significant sums of money on approved projects that would be subject to displacement by a new interregional project. And on a prospective basis, developers might find it more difficult to gain access to financing for an approved project if it might be displaced. That could in turn have the effect of raising rates for consumers.

The Commission offered several responses. The Commission's central response was that failing to account for approved regional projects that would be displaced by an interregional project would undervalue the benefits of the interregional project. The cost-avoidance method could approximate the benefits of an interregional project, the Commission explained, if it captured *all* the regional benefits gained by the ISO or RTO, including the efficiency and public-policy benefits of the interregional project. But it could capture all the regional benefits only if it included all regional projects that stood to be displaced by an interregional project. Indeed, the Commission noted, approved projects tend to be the most efficient and cost-effective projects. So by excluding them from the calculation of benefits of an interregional project, MISO would disregard the most beneficial projects. The result would be a significant undervaluation of the benefits of the interregional project.

Undervaluing the benefits, the Commission explained, would violate Order 1000's core cost-allocation principle: that an interregional project's costs be allocated in a manner "roughly commensurate" with the project's benefits. *Midcontinent Indep. Sys. Operator, Inc.*, 153 FERC ¶ 61,247 at P 10. As a result, MISO would be allocated a smaller proportion of an interregional project's costs, relative to its neighbor SERTP, than would be appropriate had the benefits been properly calculated. In addition, MISO would be less likely to pursue "more efficient or cost-effective" interregional projects. *Id.* As explained, undervaluation of an interregional project's benefits for cost-allocation purposes would result in an under-appreciation of the project's benefits for purposes of deciding whether to undertake the project.

In short, the Commission, while not disputing the possibility that the harms raised by petitioners could come to pass, determined that the interest in an appropriate allocation of the costs of an interregional project (and the resulting implications for undertaking interregional projects) required MISO to account for already-approved regional projects in its cost-allocation methodology. We see no basis for setting aside that determination by the Commission.

*Third*, petitioners argued in their request for rehearing that, "in the interests of certainty and fairness to potential [project] bidders," there "must be some point at which the comparisons of different regional and interregional projects concludes." J.A. 277. In petitioners' view, the logical point to make that comparison is after the identification of projects but before their approval. The Commission permissibly disagreed, concluding that petitioners could properly account for the benefits of an interregional project only if they considered the benefits of approved projects, not merely of identified ones. That might lead to the displacement of approved regional

projects only when it is appropriate to do so—*i.e.*, when an interregional project is selected in a region's own transmission planning process as the more efficient or cost-effective solution to a transmission need. The Commission further noted that other regions had adopted the same approach without protest.

*Fourth*, petitioners contended that their existing tariff did "not contemplate removing projects from [their] bid solicitation process." J.A. 276. In response, the Commission pointed out that MISO's tariff already contained provisions allowing for the removal of bids under certain circumstances, including cost increases or changes in developer qualifications. In light of those provisions, the Commission explained, it would not be inconsistent with MISO's transmission planning process to allow the displacement of approved regional projects when those projects are rendered unnecessary by a more optimal interregional project.

In the end, we conclude that the Commission adequately responded to petitioners' concerns about the possible effects of including approved regional projects in the cost-allocation calculation. Petitioners ultimately disagree with the Commission's policy judgment about whether the importance of properly calculating an interregional project's benefits outweighs the effects of potentially displacing approved regional projects. Petitioners' disagreement with the Commission's resolution of that issue does not render the Commission's explanation any less thorough or reasoned.

\* \* \* \* \*

For the foregoing reasons, we deny the petition for review.

*It is so ordered*.