# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 11, 2024

Decided April 25, 2025
Reissued May 30, 2025

No. 22-1316

CASEY H. NELSON, (CLAIMANT NO. 4),
PETITIONER

v.

SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

---

On Petition for Review of a Final Order
of the Securities & Exchange Commission

---

*Richard P. Gallena*, appointed by the court, argued the cause as *amicus curiae* in support of petitioner. On the briefs were *Anthony F. Shelley*, *Dawn E. Murphy-Johnson*, and *Surur Fatema Yonce*, appointed by the court.

*John R. Rady*, Appellate Counsel, U.S. Securities and Exchange Commission, argued the cause for respondent. With him on the briefs were *Megan Barbero*, General Counsel, *Michael A. Conley*, Solicitor, and *Stephen G. Yoder*, Senior Appellate Counsel.

Before: HENDERSON, MILLETT, and CHILDS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* CHILDS.

Opinion concurring in the judgment by *Circuit Judge* HENDERSON.

CHILDS, *Circuit Judge*: Casey Nelson petitioned for review of an order of the Securities and Exchange Commission allocating whistleblower awards related to a successful enforcement action for securities law violations. Nelson challenges the eligibility of a group of three other individuals who received an award for their contribution to the enforcement action.

This Court received Nelson's petition for review seven days after the statutory filing deadline, and therefore his petition is untimely. Nevertheless, the statute does not bar equitable tolling. Assuming that Nelson's particular circumstances warrant an equitable exception to the deadline, we consider his petition on the merits. We conclude the Commission's order was not arbitrary and capricious and deny the petition.

## I.

### A.

Following the 2008 financial crisis, Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank) to promote stability in the U.S. financial system. *See Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 155 (2018). Dodd-Frank amended the Securities Exchange Act of 1934 (the

Exchange Act) to establish a new whistleblower program for individuals or groups of individuals who report information about securities law violations to the Commission. *See* 15 U.S.C. § 78u-6(a)(6), (b)(1).

Dodd-Frank instituted monetary awards to incentivize reporting. To be eligible to receive a monetary award, a whistleblower must "voluntarily provide[] original information to the Commission that le[ads] to the successful enforcement of [a] covered judicial or administrative action." *Id.* § 78u-6(b)(1). Original information "is derived from the independent knowledge or analysis of a whistleblower[;]" is not "known to the Commission from any other source, unless the whistleblower is the original source of information[;]" and is not "exclusively derived from an allegation made in a judicial or administrative hearing, in a governmental report, hearing, audit, or investigation or from the news media, unless the whistleblower is a source of the information." *Id.* § 78u-6(a)(3).

Commission regulations further clarify what constitutes original information by defining "independent knowledge" and "independent analysis." Independent knowledge is "factual information in [the whistleblower's] possession that is not derived from publicly available sources." 17 C.F.R. § 240.21F-4(b)(2). Independent analysis is the whistleblower's "own analysis"—meaning the whistleblower's "examination and evaluation of information that may be publicly available, but which reveals information that is not generally known or available to the public." *Id.* § 240.21F-4(b)(3).

In certain circumstances, individuals are barred from receiving awards if their claims are based on information

obtained in connection with audits. Under the auditor exclusion, individuals are ineligible if they "gain[] the information through the performance of an audit of financial statements required under the securities laws" and if their submissions are "contrary to" the reporting procedures set out in the Exchange Act for auditors who uncover illegal acts while conducting an audit. *See* 15 U.S.C. § 78u-6(c)(2)(C); *id*. § 78j-1.

If multiple whistleblowers are eligible to receive an award for a single enforcement action, the Commission determines the amount each whistleblower receives. *See* 17 C.F.R. §§ 240.21F-3(a), 240.21F-5(c). The Commission's Claims Review Staff (CRS) conducts an initial review of whistleblower award claims and issues a preliminary determination of which parties may be eligible, as well as the appropriate award amount for each eligible party. *Id.* § 240.21F-10(d). A claimant may contest the CRS's preliminary determination by submitting a written response to the Office of the Whistleblower "setting forth the grounds for [the claimant's] objection." *Id.* § 240.21F-10(e). The Commission then reviews the preliminary determination and issues a final order. *Id.* § 240.21F-10(h). Under Section 21F(f) of the Exchange Act, a claimant may seek judicial review of "[a]ny . . . determination, except the determination of the amount of an award" by filing a petition with the appropriate court of appeals "not more than 30 days after the determination is issued by the Commission." 15 U.S.C. § 78u-6(f).

**B.**

Nelson's petition stems from a successful enforcement action against a company for securities law violations. In that action, the Commission alleged that the company failed to

disclose its process for reporting losses, effectively understating its total losses. The company and the Commission reached a settlement.

After the settlement was finalized, the Commission's Office of the Whistleblower posted a "Notice of Covered Action" inviting claims for whistleblower awards. Nelson submitted a claim based on his contributions to the action. Three individuals (the Joint Claimants) also filed requests for awards, which were considered together as a joint claim.

The CRS issued a preliminary determination recommending that the Commission grant monetary awards to Nelson and to the Joint Claimants. The Preliminary Determination was informed by a declaration in the record from one of the primary enforcement attorneys, Christopher W. Ahart. The declaration detailed the Joint Claimants' and Nelson's contributions to the action.

The CRS determined that the Joint Claimants presented original information based on their independent knowledge and independent analysis and that they were not ineligible under the auditor exclusion. The CRS also determined that Nelson presented original information based on his independent analysis.

The Joint Claimants did not contest the Preliminary Determination, but Nelson did. Nelson argued that he was the sole eligible whistleblower who presented original information to the Commission. He contended that the Joint Claimants merely repackaged his original analysis, which he had "float[ed]" in a research publication before the Joint Claimants made their submission to the Commission. J.A. 120–22.

Nelson did not identify the auditor exclusion in his objections to the Preliminary Determination.

The Commission's Final Order adopted the CRS's recommendation that both Nelson and the Joint Claimants were eligible to receive awards. The Commission concluded that Nelson provided original information that "significantly contributed to the success" of the enforcement action. J.A. 255. The Commission further concluded that the Joint Claimants also provided original information, including by submitting information that prompted Enforcement staff to look into new conduct and by substantially assisting the staff during the course of its investigation.

The Commission also rejected Nelson's allegation that the Joint Claimants merely repackaged his original analysis, finding instead that the Joint Claimants' submission contained non-public information not included in the research publication. To support the Commission's Final Order, Ahart submitted a supplemental declaration, clarifying that the Joint Claimants provided internal documents to the Commission, separate from the publicly available information.

## C.

The Final Order issued on November 4, 2022. Under Section 21F(f) of the Exchange Act, Nelson was required to file his petition for review by December 5, 2022. *See* 15 U.S.C. § 78u-6(f); Fed. R. App. P. 26(a)(1)(C). Nelson submitted an affidavit recounting his alleged attempts to file his petition on that day.

Proceeding *pro se*, on the morning of December 5, Nelson accessed the D.C. Circuit website to find out how to file his

petition electronically. Nelson specifically reviewed the guidance regarding filings by *pro se* parties. Even after reading the guidance, he was unaware that *pro se* parties are required to file petitions in paper unless granted permission to file electronically via the Court's Electronic Case Filing (ECF) System.

Assuming he could file his petition electronically, Nelson navigated to the Public Access to Court Electronic Records (PACER) "Login Links" page. In connection with a separate federal case in a district court, Nelson had previously created a "Case Search Only" individual PACER account. That account allowed Nelson to view docket materials, but it did not give him permission to file documents electronically. On the Login Links page, Nelson found instructions directing him to upgrade his individual PACER account so that he could make filings electronically. Nelson submitted a request to upgrade his account and register as an electronic filer (E-filer). The PACER system, however, rejected his request.

Having failed to register as an E-filer, Nelson then called the telephone number listed on the D.C. Circuit's website for "Clerk's Office General Information." Nelson spoke to an individual whom he understood to be employed by the Clerk's Office and asked why his request was rejected. According to Nelson, the individual informed him that as a *pro se* petitioner he was required to submit filings in paper. Because Nelson was in Dallas, Texas, at the time, he was unable to personally deliver his petition to the Clerk's Office in Washington, D.C. Nelson claims that the individual suggested that Nelson could send his petition by mail to the Clerk's Office. On the afternoon of December 5, Nelson mailed his petition. The Clerk's Office received Nelson's petition on December 12, 2022.

The Commission moved to dismiss Nelson's petition as untimely, and Nelson moved for summary reversal of the Final Order. A special panel of this Court denied Nelson's motion and referred the Commission's motion to the merits panel. The special panel appointed counsel as *amicus curiae* to present arguments in favor of Nelson's position and instructed the parties to address whether equitable tolling of a statutory deadline is a threshold issue that can be resolved prior to a finding of jurisdiction.[1]

**II.**

We first consider whether Nelson's petition is timely. The Clerk of Court received the petition seven days after the statutory deadline. Nelson contends that, under the Federal Rules of Appellate Procedure (FRAP), we must accept his petition as timely. Nelson's argument is unavailing.

The Federal Rules afford *pro se* petitioners some solicitude when making filings before a court. Unlike seasoned attorneys, *pro se* petitioners may be unfamiliar with the details of a given court's requirements of form and process. Accordingly, "[p]*ro se* litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings." *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993).

Nonetheless, the Federal Rules balance the consideration extended to *pro se* petitioners with fairness to all parties and

---

[1] This Court appointed Anthony F. Shelley as *amicus curiae* to argue in support of Nelson's position in this case. He and his colleagues have well discharged their duty, and the Court is grateful for their work.

the need for effective management of court dockets. This balance is reflected in FRAP 25's approach to electronic filings by *pro se* petitioners. FRAP 25(a)(2) permits a *pro se* petitioner to file electronically, but "only if allowed by court order or by local rule." Fed. R. App. P. 25(a)(2)(B)(ii).

The requirement that *pro se* petitioners seek leave before making electronic filings helps ensure that they are not placed at a disadvantage. A court may need to consider whether petitioners have the technological tools not just to submit but also to receive filings electronically. This inquiry is particularly important, as registration as an E-filer "constitutes consent to electronic service of all documents." D.C. Cir. R. 25(f).

Our circuit rules reflect FRAP 25(a)(2)'s approach to electronic filings by *pro se* petitioners. Circuit Rule 25(c) provides that "[a] party proceeding *pro se* must file documents in paper form with the clerk and must be served with documents in paper form unless the *pro se* party has been permitted to register as an [E-]filer." D.C. Cir. R. 25(c)(1). Moreover, to register as an E-filer, a *pro se* petitioner "must file a motion in this court." D.C. Cir. R. 25(b)(2). Nelson did not seek leave to file electronically, as required by FRAP 25(a)(2) and Circuit Rule 25.[2]

---

[2] Circuit Rules provide an alternative for *pro se* litigants who have not received leave to file electronically but need to make an emergency filing. Pursuant to Circuit Rule 25(g), "In emergencies or other compelling circumstances . . . the [Clerk of Court] may authorize that papers be filed with the court through facsimile transmission or email." D.C. Cir. R. 25(g). Petitioners may do so

Despite Nelson's argument to the contrary, Circuit Rule 25(c)'s requirement that *pro se* petitioners seek leave to file electronically does not run afoul of FRAP 47. FRAP 47 stipulates that "[a] local rule imposing a requirement of form must not be enforced in a manner that causes a party to lose rights because of a nonwillful failure to comply with the requirement." Fed. R. App. P. 47(a)(2). Nelson contends that enforcement of Circuit Rule 25(c) would lead to a deprivation of his right to file a petition. But Circuit Rule 25(c) does not impose a mere "requirement of form" on the petition. It establishes a separate, threshold step at which a party must file a motion and the court must make a determination that electronic filing is appropriate. Nelson cannot, therefore, invoke FRAP 47 to limit Circuit Rule 25(c).

Nelson further contends that even if his mailed petition was not timely, he did make a timely electronic filing—his request to become an E-filer—which the electronic case filing system was required to accept. As Nelson points out, "the electronic case filing system is . . . a substitute for the clerk of the court." *Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 548 F.3d 137, 142 (D.C. Cir. 2008). And under FRAP 25(a)(4), "[t]he clerk must not refuse to accept for filing any paper presented . . . solely because it is not presented in proper form as required by [the FRAP] or by any local rule or practice." Fed. R. App. P. 25(a)(4). But Nelson did not attempt to make a filing. Instead, he attempted to create an E-filer account. *Cf. Franklin v. McHugh*, 804 F.3d 627, 632 (2d Cir. 2015) ("[A] notice of appeal is not 'filed' . . . until counsel completes the CM/ECF filing process in compliance with the applicable local

only if they have received prior permission from the Clerk of Court. *Id.* Nelson did not ask for permission to make an emergency filing under Circuit Rule 25(g).

district court rules"). Neither the Clerk nor the electronic case filing system "refuse[d] to accept the filing" for Nelson's petition on the basis that it was "not presented in proper form." Fed. R. App. P. 25(a)(4). The petition was never presented to the Clerk or the electronic case filing system in any form prior to the receipt of the mailed submission. Therefore, FRAP 25(a)(4) does not provide Nelson the relief he seeks.

## III.

In the alternative, Nelson argues that if his petition is untimely, we should equitably toll the statutory deadline. "Equitable tolling effectively extends an otherwise discrete limitations period set by Congress . . . . [I]t pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Arellano v. McDonough*, 598 U.S. 1, 6 (2023) (internal quotation marks and citations omitted). Nelson argues that the Exchange Act does not bar equitable tolling and that his particular circumstances warrant it. We agree that the statutory deadline may be tolled but assume without deciding that Nelson is entitled to equitable tolling.

## A.

### 1.

To determine whether the Exchange Act bars equitable tolling, we initially ask if the deadline is jurisdictional, divesting the Court of its ability to consider an equitable exception. *See Bowles v. Russell*, 551 U.S. 205, 214 (2007) (jurisdictional requirements do not allow for equitable exceptions); *Menominee Indian Tribe of Wisc. v. United States*,

614 F.3d 519, 524 (D.C. Cir. 2010) (a court "has no authority to create equitable exceptions to jurisdictional requirements"). We interpret a filing deadline "as jurisdictional only if Congress clearly states that it is." *Harrow v. Dep't of Def.*, 601 U.S. 480, 484 (2024) (internal quotation marks and citations omitted).

Section 21F(f) provides in relevant part that "[a]ny determination of an award" (with one exception not relevant here) "may be appealed to the appropriate court of appeals of the United States not more than 30 days after the determination is issued by the Commission." 15 U.S.C. § 78u-6(f).

Under the Supreme Court's decision in *Harrow*, we consider if the statute "mention[s]" appellate court "jurisdiction, whether generally or over untimely claims." 601 U.S. at 486. Like the statute in *Harrow*, which did not impose a jurisdictional deadline, Section 21F(f) "describes how a litigant can obtain judicial review of the [Commission's] final orders," "directs those appeals" to the appropriate court of appeals, and "sets a deadline." *Id.* at 485. It makes no mention of an appellate court's jurisdiction. Nor does anything else in the statutory text or its structure suggest the timeline is jurisdictional. Section 21F(f) therefore does not impose a jurisdictional deadline.[3]

---

[3] We instructed the parties to brief whether we can address equitable tolling before deciding if we have jurisdiction to hear the case. Both parties agree that we may do so. Because Section 21F(f) is not a jurisdictional requirement, we do not need to answer whether equitable tolling can be addressed before jurisdiction.

**2.**

We next determine whether equitable tolling is otherwise unavailable.  Not all non-jurisdictional statutory deadlines can be equitably tolled.  *See Young v. SEC*, 956 F.3d 650, 654–655 (D.C. Cir. 2020).  The Commission argues that Section 21F(f) operates as a "mandatory deadline to which equitable tolling does not apply once an untimeliness objection is properly raised."  Resp't Br. 39.  We are not persuaded.

"[N]onjurisdictional [timing rules] are presumptively subject to equitable tolling."  *Boechler P.C. v. Comm'r.*, 596 U.S. 199, 209 (2022); *see Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 276 (D.C. Cir. 2003) ("[I]t is reasonable to presume the Congress, unless it said otherwise, expect[s] the Government to face equitable tolling in litigation because equitable tolling is a traditional feature of the procedural landscape.").  That presumption reflects that Congress "legislate[s] against a background of common-law adjudicatory principles," including equitable tolling.  *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10–11 (2014) (alteration in original) (quoting *Astoria Fed. Sav. & Loan Assn. v. Solimino*, 501 U.S. 104, 108 (1991)).  Section 21F(f) does not require us to depart from the presumption that equitable tolling is available for non-jurisdictional deadlines.

The key question is whether there is "good reason to believe that Congress did *not* want the equitable tolling doctrine to apply" to Section 21F(f).  *United States v. Brockamp*, 519 U.S. 347, 350 (1997) (emphasis in original).  We have previously found that a similar non-jurisdictional statutory deadline could be equitably tolled.  *See Myers v. Comm'r.*, 928 F.3d 1025, 1036–37 (D.C. Cir. 2019).  In *Myers*, the relevant statute provided that whistleblower awards by the

Internal Revenue Service must "within 30 days . . . be appealed to the Tax Court." *Id.* We noted that neither the plain language of the statute, nor the legislative or regulatory history indicated that Congress barred equitable tolling. *Id.* at 1036–37. Similarly, here, the Commission does not point to anything in the statute or the legislative history that suggests equitable tolling of Section 21F(f)'s deadline is unavailable.

Alternatively, the Commission claims that FRAP 26(b)(2) displaces the presumption that equitable tolling is available. FRAP 26(b) provides that a court "may not extend the time to file . . . a petition to enjoin, set aside, suspend, modify, enforce, or otherwise review an order of an administrative agency . . . unless specifically authorized by law." Fed R. App. P. 26(b) The Commission contends that FRAP 26(b)(2) "prohibit[s] courts from applying common law equitable-tolling principles to petitions for review," unless a statute "specifically authorize[s] it." Resp't Br. 40. As we have previously stressed, however, the presumption of equitable tolling applies to deadlines pertaining to petitions for review. *See N.Y. Republican State Comm. v. SEC*, 799 F.3d 1126, 1134 (D.C. Cir. 2015) (equitable tolling available in petitions for review "unless Congress has shown its intent" otherwise); *Robinson v. Dep't of Homeland Sec. Off. of Insp. Gen.*, 71 F.4th 51, 57 (D.C. Cir. 2023).

The Commission's attempted reliance on *Nutraceutical Corp. v. Lambert*, 586 U.S. 188 (2019), is likewise misplaced. In *Nutraceutical*, the Supreme Court found that filing deadlines in the Federal Rules of Civil Procedure are not subject to equitable tolling. *Id.* at 192–193. Here, however, the relevant filing deadline is provided by a statute and not a Federal Rule, and the Supreme Court has yet to extend this constraint on the Federal Rules to statutory deadlines. *See Fort Bend Cnty., Tex.*

*v. Davis*, 587 U.S. 541, 549 n.5 (2019) (reserving a decision on whether a "mandatory claim-processing" deadline in a statute and not a Federal Rule is subject to equitable tolling exceptions).

**B.**

As Section 21F(f)'s deadline may be tolled, we next ask whether Nelson is entitled to equitable tolling in light of his particular circumstances. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Moreover, "equitable tolling must be applied flexibly, case by case, without retreating to 'mechanical rules' or 'archaic rigidity.'" *Menominee Indian Tribe of Wisc. v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014) (quoting *Holland v. Florida*, 560 U.S. 631, 649–50 (2010)).

Equitable tolling is not appropriate if "the circumstance that stood in a litigant's way [is] a product of that litigant's own misunderstanding of the law or tactical mistakes in litigation." *Young*, 956 F.3d at 655 (quoting *Menominee Indian Tribe of Wisc.*, 764 F.3d at 58). For example, "filing an action in a state court or federal agency that clearly lacks jurisdiction over the action does not toll the time for filing in federal court." *Id.* at 656 (quoting *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990)).

By his own accounting, Nelson primarily failed to file his petition on time because he did not understand the D.C. Circuit's requirements for electronic filings by *pro se* petitioners. Therefore, Nelson's circumstances come close to

a "garden variety claim of excusable neglect," which does not warrant equitable tolling. *Id*.

But Nelson also raises factors that altogether could weigh in favor of equitable tolling. Nelson contends that, proceeding *pro se*, he diligently sought to file his petition. Once his request to become an E-filer was rejected, he expeditiously sought to preserve his rights by phoning the Clerk of Court and then mailing a physical copy of his petition, which he could not hand-deliver because he does not reside in the District of Columbia.

Assuming without deciding that equitable tolling is warranted here, Nelson's petition fails on the merits because the Commission did not act arbitrarily and capriciously.

**IV.**

**A.**

We have jurisdiction to review the Commission's determination of whether a claimant is eligible for a whistleblower award. 15 U.S.C. § 78u-6(f). Pursuant to 15 U.S.C. § 78u-6(f), we review the Commission's eligibility determinations "in accordance with section 706" of the Administrative Procedure Act, which requires us to set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Commission's findings of fact are conclusive if supported by substantial evidence. 15 U.S.C. § 78y(a)(4).

**B.**

Nelson contends that the Commission acted arbitrarily and capriciously by concluding that the Joint Claimants were eligible for an award. We disagree.

The Commission reasonably determined that the Joint Claimants provided original information derived from their independent knowledge and independent analysis, as required by the statute and Commission regulations. Whistleblowers have independent knowledge if they possess information that is not "derived from publicly available sources." 17 C.F.R. § 240.21F-4(b)(2). A whistleblower's independent analysis may examine information that is publicly available but must "reveal[] information that is not generally known or available to the public." *Id.* § 240.21F-4(b)(3). The Commission adequately explained that the Joint Claimants "provided new information that caused the staff to inquire into new conduct as part of its existing investigation" and substantially assisted the staff during the course of the investigation, including by "providing additional information and participating in interviews with the staff." J.A. 254.

Nelson primarily argues that the Joint Claimants' submission did not reflect their own original information. Rather, Nelson contends, the Joint Claimants' submission was entirely based on a research publication, which originated with Nelson and was published about a week before the Joint Claimants made their submission to the Commission.

The Commission reasonably addressed and rejected Nelson's argument in the Final Order. It determined that the Joint Claimants' submission contained certain non-public, internal information regarding the company's losses that was

not included in the research publication and that aided the Commission in its investigation.

The evidence in the record supports the Commission's finding that the Joint Claimants helped close a gap in the publicly available information regarding the company's losses. The research publication did not quantify certain losses because the necessary information was unavailable. The Ahart declarations indicate that the Joint Claimants provided relevant, non-public material that helped the Commission understand the losses that the research publication could not quantify.

Finally, Nelson invokes the auditor exclusion, which bars claimants from receiving awards based on material obtained through an audit in certain circumstances. He argues that even if the Joint Claimants provided certain information to the Commission that was not included in the research publication, that information was obtained through one claimant's work in connection with an audit and cannot support the Joint Claimants' eligibility.

Nelson's argument is forfeited because he did not raise it before the Commission, even though it was available to him at the time.[4] The Exchange Act makes clear that "[n]o objection to an order or rule of the Commission, for which review is sought under this section, may be considered by the court

---

[4] The parties dispute which Commission rule implementing the requirements of the auditor exclusion in Section 21F applies here— Rule 21F-4(b)(4) or Rule 21F-8(c)(4). Regardless, Nelson forfeited the argument because he did not raise the auditor exclusion when challenging the Preliminary Determination before the Commission.

unless it was urged before the Commission or there was reasonable ground for failure to do so."  15 U.S.C. § 78y(c)(1).

Nelson failed to raise the auditor exclusion in his objections to the Claims Review Staff's Preliminary Determination.  Commission regulations direct Nelson to "contest the Preliminary Determination made by the Claims Review Staff by submitting a written response to the Office of the Whistleblower setting forth the grounds for [his] objection."  *See* 17 C.F.R. § 240.21F-10(e).  It is this submission of objections "contesting [the] Preliminary Determination" that exhausts Nelson's administrative remedies before the Commission and enables him to "pursu[e] an appeal" of a final order in court.  *See id*. § 21F-10(f).  The objections thus put the Commission on notice of a claimant's issues with the staff's preliminary determination and inform the Commission in rendering a reviewable final order.

In *Doe v. SEC*, 28 F.4th 1306 (D.C. Cir. 2022), we looked beyond the objections to a preliminary determination to determine if an argument was adequately raised and preserved, but we did so because the objections included a statement explicitly incorporating the arguments made in an initial claim filing.  *See id.* at 1316.  Nelson's objections include no such explicit incorporation.

Although Nelson now proceeds *pro se* before this Court and we afford him solicitude in arguments properly before us, Nelson appears to have been represented by counsel before the Commission.  Nelson's objections to the Preliminary Determination explicitly stated that the Commission could follow up with "my attorney."  J.A. 130.  When the Commission issued its Final Order, it transmitted a copy of the order to the attorney Nelson had identified, stating that it issued

"your client" a whistleblower award. J.A. 249. Accordingly, we do not find it appropriate to extend solicitude to construing the content of Nelson's filings in the proceeding before the Commission, where he had counsel to guide him.

## V.

For the foregoing reasons, Nelson's petition for review is untimely, and assuming Nelson is entitled to equitable tolling, his petition fails on the merits. Nelson's petition for review is therefore denied.

*So ordered.*

KAREN LeCRAFT HENDERSON, *Circuit Judge*, concurring in the judgment: My colleagues reach the right result—denying Nelson's petition for review on the merits—but, I respectfully submit, only after three wrong turns. First, Nelson's petition was timely because he took every step he could to submit his filing to the clerk of the court but it was nevertheless rejected solely because it was not presented in proper form. Second, if Nelson's petition were in fact untimely, he would not have been eligible for equitable tolling because no extraordinary circumstance prevented him from timely filing. Third, Nelson has not forfeited his auditor-exclusion argument because he urged it before the SEC in his award application. Even so, because the SEC did not act arbitrarily or capriciously in its award decision, they correctly deny Nelson's petition for review.

## A.

Under the Federal Rules of Appellate Procedure (Appellate Rules), a pro se party "may file electronically only if allowed by court order or by local rule." Fed. R. App. P. 25(a)(2)(B)(ii). As the majority observes, the requirement that a party seek leave before filing electronically is intended to "ensure that [he is] not placed at a disadvantage" if, for example, he does not have the "technological tools" to file and receive filings electronically. Maj. Op. 9.

The Rules Committee similarly explained in the context of a parallel provision in the Federal Rules of Civil Procedure (Civil Rules) that courts cannot yet assume that a pro se party can take advantage of electronic filing. *See* Fed. R. Civ. P. 5(d) advisory committee's note to 2018 amendment (discussing Fed. R. Civ. P. 5(d)(3)). The committee therefore admonished that "[c]are should be taken to ensure that an order to file electronically does not impede access to the court." *Id.* To

further the goal of ensuring access, Civil Rule 5(d)(4) then provides that "[t]he clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice."

The Appellate Rules have a parallel provision, requiring that "[t]he clerk must not refuse to accept for filing any paper presented for that purpose solely because it is not presented in proper form as required by these rules or by any local rule or practice." Fed. R. App. P. 25(a)(4); *see also id.* 25(a)(2)(B)(iv) ("A paper filed electronically is a written paper for purposes of these rules."). The "electronic case filing system is . . . a substitute for the clerk of the court." *Royall v. Nat'l Ass'n of Letter Carriers*, 548 F.3d 137, 142 (D.C. Cir. 2008). Thus, the electronic case filing (ECF) system must not refuse to accept any filing solely because it is not presented in proper form.

Our circuit rules also provide that a pro se party "must file documents in paper form" unless he has been permitted to register as an ECF-filer. D.C. Cir. R. 25(c)(1). To obtain permission to register as an ECF-filer, a pro se party "must file a motion in this court." *Id.* 25(b)(2). Here, Nelson tried to timely file his petition online without having first filed such a motion but his request to register as an ECF-filer was rejected. In other words, the electronic system—the clerk's substitute—prevented him from taking any further steps toward submitting his filing. But as we have explained, "a step forbidden by a person standing at a counter is equally forbidden to an automated agent that acts on the court's behalf." *Royall*, 548 F.3d at 142–43 (quoting *Farzana K. v. .Ind. Dep't of Educ.*, 473 F.3d 703, 707 (7th Cir. 2007)). The "computer's reaction does more to show the limits of some programmer's imagination than to render the suit untimely." *Farzana K.*, 473 F.3d at 707. Instead, "electronic submission . . . during the filing period

constitutes timely filing even if the electronic case filing system rejects the submission." *Royall*, 548 F.3d at 143.

It elevates form over substance—precisely what the Appellate Rules prohibit—to say that he never "presented" his filing to the ECF system simply because he was barred from proceeding at the registration rather than the submission stage. Under that logic, although the clerk could not refuse to accept papers at the counter of the clerk's office, he could permissibly stop a would-be filer at the courthouse steps and tell him he could not enter the building and approach the counter because the filing must be submitted electronically. *See* D.C. Cir. R. 25(a) ("Except as otherwise prescribed by Circuit rule or order of the court, . . . all documents must be filed electronically . . . ."). The Rules neither require nor permit such a curious result.

Deeming Nelson's petition timely also accords with Appellate Rule 47(a)(2), which provides that "[a] local rule imposing a requirement of form must not be enforced in a manner that causes a party to lose rights because of a nonwillful failure to comply with the requirement." As my colleagues point out, Circuit Rule 25(c) "establishes a separate, threshold step at which a party must file a motion and the court must make a determination that electronic filing is appropriate." Maj. Op. 10. True enough. But it also unambiguously imposes a requirement of form—filing "in paper form"—that the majority enforces in a manner that deprives Nelson of his right to petition for relief because of his nonwillful failure to comply. That is just what Appellate Rule 47(a)(2) is designed to prevent.

## B.

Having concluded that Nelson's petition was untimely, the majority next brushes past our precedent in *SEC v. Young*, 956

F.3d 650 (D.C. Cir. 2020).  As we explained there, "a litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Id.* at 655 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  To qualify as extraordinary, "the circumstances that caused a litigant's delay must have been beyond its control."  *Id.* (quoting *Menominee Indian Tribe of Wis. v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014)).  "The circumstance that stood in a litigant's way cannot be a product of that litigant's own misunderstanding of the law or tactical mistakes in litigation."  *Menominee Tribe*, 764 F.3d at 58.  Additionally, "ignorance of the law," including that attributable to pro se status, is "not an appropriate basis for equitable tolling."  *Young*, 956 F.3d at 656.  And "statements made by the clerk's office staff," including failing to correct a party's misunderstanding, are not enough to show extraordinary circumstances unless they are affirmatively misleading.  *See id.* at 657.

On these facts, Nelson would not be eligible for equitable tolling.  He filed late—in the majority's view—due to his own misunderstanding of federal and local rules about the form in which he had to file his petition.  That "mistake is a 'garden variety claim of excusable neglect.'"  *Id.* at 656 (quoting *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990)).  Granted, he called the clerk's office and was not told that he could request permission to make an emergency filing by fax or email, *see* D.C. Cir. R. 25(g), but he has not alleged that he was affirmatively misled.  Thus, he is ineligible for equitable tolling.

The majority lists as "factors that altogether could weigh in favor of equitable tolling" that Nelson "sought to preserve his rights by phoning the Clerk of Court and then mailing a

physical copy of his petition" and that he "could not hand-deliver" his petition because "he does not reside in the District of Columbia." Maj. Op. 15. Calling the clerk's office and mailing his petition arguably demonstrates that Nelson diligently pursued his rights, although other courts have pointed out that "the errors that often accompany hurried action do not enable the bungling lawyer to grant himself extra time." *Farzana K.*, 473 F.3d at 705. But living outside the District of Columbia is a common, not extraordinary, obstacle to meeting a D.C. court filing deadline. Thus, the majority identifies no extraordinary circumstance, as required by our precedent, that could support applying equitable tolling here.

Granted, if a non-jurisdictional issue of statutory reviewability "presents a difficult question," a court may assume reviewability and resolve the claim on the merits. *Trump v. Hawaii*, 585 U.S. 667, 682–83 (2018). But this is not a difficult question—Nelson is plainly ineligible for equitable tolling. In my view, then, the majority errs by reaching the merits.

## C.

On the merits, the majority incorrectly deems Nelson's auditor-exclusion argument forfeit. Maj. Op. 18. Under 15 U.S.C. § 78y(c)(1), "[n]o objection to an order or rule of the Commission, for which review is sought under this section, may be considered by the court unless it was urged before the Commission or there was reasonable ground for failure to do so." Contrary to the majority's assertion that Nelson "did not raise it before the Commission," Maj. Op. 18, Nelson urged his auditor-exclusion argument before the SEC by advancing it in his award application, J.A. 55 (arguing that the Joint Claimants are ineligible for an award because their "information was

obtained through the performance of an audit engagement and does not appear to qualify for any of the pertinent exceptions").

To support its position, the majority cites *Doe v. SEC*, 28 F.4th 1306, 1316 (D.C. Cir. 2022), but that case is inapt. In *Doe*, the petitioners tried to avoid forfeiture by relying on footnotes in their challenge to the SEC's preliminary award determination. *Id.* Those footnotes sought to "incorporate all information and arguments" made in the petitioners' award applications and to "not waive any argument or position." *Id.* (cleaned up). We observed that the petitioners "fail[ed] to provide any citation to the portion of their original award applications where they made this argument," concluding that they "never made" such an argument. *Id.*; *see also Springsteen-Abbott v. SEC*, 989 F.3d 4, 8 (D.C. Cir. 2021) (holding that petitioner "failed to raise her constitutional challenges before the Commission" because she had previously raised three issues, none of which was in "*substance*" "akin to the Due Process concerns" later asserted). Yet Amicus has cited to the portion of Nelson's original award application in which he urged the substance of his auditor-exclusion argument.

The majority's objection is instead that Nelson did not re-raise this argument when challenging the preliminary award determination, when the SEC rejected his auditor-exclusion argument. Maj. Op. 18. Relatedly, in support of its forfeiture argument the SEC cites one case in which the petitioner "failed to challenge" an SEC finding "in seeking reconsideration by the Commission." *KPMG, LLP v. SEC*, 289 F.3d 109, 117 (D.C. Cir. 2002). There, the petitioner had not previously raised its argument. Indeed, its "first notice" that the SEC would make the finding at issue came in the order of which the petitioner would later seek reconsideration. *Id.* Thus, the Court's analysis focused on whether there were reasonable

grounds for the petitioner's failure to raise the argument at all. *See id.* at 118. Here, as discussed, Nelson had already raised his auditor-exclusion argument in his award application.

SEC regulations do not indicate a failure to exhaust here either. A whistleblower-award claimant "may contest the Preliminary Determination . . . by submitting a written response . . . setting forth the grounds for [the] objection." 17 C.F.R. § 240.21F-10(e). Further, "failure to submit a timely response contesting a Preliminary Determination will constitute a failure to exhaust administrative remedies." *Id.* § 240.21F-10(f). But Nelson satisfied the SEC's administrative-exhaustion rule by timely submitting a request for reconsideration setting out grounds for objection, although he did not repeat the specific auditor-exclusion argument.

The question then becomes whether an argument must be raised with specificity in a request for reconsideration lest it be forfeit in a petition for review. The plain text of the statute imposes no such requirement. By contrast, for example, statutes administered by the Federal Energy Regulatory Commission (FERC) impose an "unusually strict exhaustion requirement," mandating that each argument be raised with "specificity" in a request for rehearing. *Ameren Servs. Co. v. FERC*, 893 F.3d 786, 793 (D.C. Cir. 2018) (first quoting *Wabash Valley Power Ass'n v. FERC*, 268 F.3d 1105, 1114 (D.C. Cir. 2001); then quoting *Wis. Power & Light Co. v. FERC*, 363 F.3d 453, 460 (D.C. Cir. 2004)). "[A]ll three of the major statutes administered by FERC" impose not only a "mandatory petition-for-rehearing requirement" but also "the additional requirement of raising the very objection urged on appeal." *ASARCO, Inc. v. FERC*, 777 F.2d 764, 774 (D.C. Cir. 1985) (citing 15 U.S.C. §§ 717r, 3416; 16 U.S.C. § 825*l*). Under those statutes, "[n]o objection to the order of the Commission shall be considered by the court unless such

objection shall have been urged before the Commission *in the application for rehearing* unless there is reasonable ground for failure so to do." *E.g.*, 16 U.S.C. § 825*l*(b) (emphasis added).

Instead, the Exchange Act simply requires an objection to be "urged before the Commission." 15 U.S.C. § 78y(c)(1). As the majority acknowledges, we also give special "solicitude" to pro se petitioners who may be less familiar than seasoned advocates with the "requirements of form and process," although they must still comply with relevant rules. Maj. Op. 8. My colleagues state that Nelson "appears to have been represented by counsel before the Commission," *id.* at 19, but the record is not clear on that score. Counsel submitted Nelson's award application on his behalf but Nelson submitted his request for reconsideration himself, although he provided his counsel's contact details in addition to his own. Absent a clear rule from the statutory text or our precedent requiring objections to be reasserted on reconsideration, Nelson—who became pro se at some point between his award application and his notice of appeal—should not be deemed to have forfeited the auditor-exclusion argument when it was raised in his award application.

**D.**

On the merits of Nelson's auditor-exclusion argument—as the majority notes—the parties dispute which SEC rule implementing the auditor-exclusion applies here. Maj. Op. 18 n.5. Especially given our duty to "construe liberally" pro se filings to "avoid inappropriately stringent application of formal labeling requirements," *Dufur v. U.S. Parole Comm'n*, 34 F.4th 1090, 1096 (D.C. Cir. 2022), I think that it should not be considered forfeiture that Nelson and Amicus cited the auditor-exclusion rule applicable to non-issuers rather than the

corresponding rule for issuers. *Compare* 17 C.F.R. § 240.21F-4(b)(4)(iii)(D), *with* 17 C.F.R. § 240.21F-8(c)(4).

In any event, under either rule Nelson has not shown that the SEC acted arbitrarily or capriciously in concluding that the rule did not apply. In both its preliminary determination and its final order, the SEC stated that the auditor-exclusion rule did not apply because the relevant whistleblower had internally reported his or her concerns and the audit team did not file a section 10A report with either the audited company or the SEC.[1] Under Rule 21F-8(c)(4), "a firm's failure to promptly report" a securities law violation discovered during a section 10A audit "constitutes a violation of Section 10A" and "[a] whistleblower may *at any point* thereafter report this Section 10A violation to the Commission, and thus become eligible for an award." Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34300, 34336 n.315 (June 13, 2011). Under Rule 21F-4(b)(4), a whistleblower who obtains information in connection with an audit may still be eligible for an award if at least 120 days elapse between when the whistleblower provides information to certain persons and when he provides it to the SEC. 17 C.F.R.

---

[1] If an audit firm "detects . . . that an illegal act . . . may have occurred, the firm shall" determine " whether it is likely that" the act occurred and, if so, "the possible effect" of it on the issuer's financial statements. 15 U.S.C. § 78j-1(b)(1). "[U]nless the illegal act is clearly inconsequential," the audit firm shall "as soon as practicable, inform the appropriate level of the management of the issuer and assure that the audit committee . . . is adequately informed." *Id.* § 78j-1(b)(1)(B). Subject to certain preconditions, the audit firm may have an obligation to escalate the report to the issuer's board of directors. *Id.* § 78j-1(b)(2). If the board receives a (b)(2) report, the issuer "shall inform the Commission by notice not later than 1 business day after the receipt of such report" and, if it does not, the audit firm must do so. *Id.* § 78j-1(b)(3).

§ 240.21F-4(b)(4)(v)(C). Here, the relevant whistleblower waited six months between reporting internally and reporting to the SEC, satisfying both rules' requirements.

In a last-ditch effort, Amicus contends that the record does not show that the relevant whistleblower raised specific concerns internally about the information later submitted to the SEC as opposed to generic concerns about how the audit was being conducted overall. But the Ahart declaration explains that the SEC did not independently corroborate the nature and extent of the internally raised concerns because it wanted to avoid possible disclosure of the whistleblower's identity. That satisfies the SEC's obligation to "explain why it decided to act as it did by providing a statement of reasoning rather than a mere conclusion." *Cboe Futures Exch. v. SEC*, 77 F.4th 971, 980 (D.C. Cir. 2023) (quoting *Butte County v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010)). Indeed, by statute the SEC is generally required to protect a whistleblower's identity unless disclosure is required in a public proceeding. 15 U.S.C. § 78u-6(h)(2). Particularly in light of the SEC's confidentiality obligations, its judgment call not to independently corroborate the relevant whistleblower's report was not arbitrary or capricious.

\* \* \*

Accordingly, Nelson's petition fails on the merits and is properly denied.